UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:11CR81AGF(MLM) |
| DOMINIC MICHAEL ORLANDO, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant's Motion to Suppress Statements and Evidence. [Doc. 83][1] The government responded. [Doc. 109] The government also filed a Motion for Pretrial Determination of the Admissibility of Defendant's Statements. [Doc. 61]

At an Evidentiary Hearing on May 17, 2011 the government presented the testimony of Deputy Virgil Sieberg and Corporal Gerald Williams, both with the Jefferson County Sheriff's Department. Defendant did not present evidence. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

---

[1] Defendant also filed three discovery requests. (Docs. 85, 86 and 87). The government responded to each of the requests. (Doc. 109). Because the requests were not denominated as motions nor docketed as such, they need no ruling by the court. The court notes, however, that the government has complied or will timely comply with all of the Rules of Criminal Procedure dealing with discovery. At the Evidentiary Hearing counsel for defendant acknowledged that there were no discovery disputes.

## FINDINGS OF FACT

Deputy Virgil Sieberg has been with the Jefferson County Sheriff's Department for twelve years. He has had extensive training including general police work, interview and interrogation techniques, hostage negotiation and crisis intervention.

On October 25, 2010 he was assigned to road patrol. He was dispatched to the residence of Amy Rudd at 3650 Flucom Road. The reporting party was Nancy Sparks (the mother of Amy Rudd, who is the defendant's ex-girlfriend). Ms. Sparks was present at the residence and was interviewed by Dep. Sieberg. She said her daughter's ex-boyfriend (defendant) had driven by the driveway of the residence, slowed down and yelled at her "Hey you angry bitch. Why don't you go home before I run over your _____ ass". She said she called the police after defendant left. She gave Dep. Sieberg a statement.

Jefferson County narcotics detectives who were familiar with defendant, heard the dispatch on the radio and eventually responded to the Flucom residence.[2] They then proceeded to 12945 Hencher Road, defendant's address, followed by Dep. Sieberg. He made contact with defendant and told him why they were there. No one yelled at the defendant or drew their weapons. Defendant did not appear sleepy, tired or under the influence of drugs or alcohol.

Dep. Sieberg explained the allegations against defendant and because of Ms. Sparks' complaint, read him his <u>Miranda</u> Rights from the form used by the Jefferson County Sheriff's Department. (Gov.Ex. 1) Dep. Sieberg filled out the top part of the

---

[2] See Corporal Gerald Williams' testimony for the intervening events that occurred before their arrival at the Flucom address.

form and then as he read each right to defendant he asked defendant to initial next to each right. The form shows "D.O." on the line by each right. Dep. Sieberg did not ask defendant any questions. The bottom of the form is a "Waiver of Rights" and Dep. Sieberg read that portion to defendant. The defendant said he did not want to sign the Waiver and he did not want to make a statement regarding the incident with Ms. Sparks. Dep. Sieberg then terminated the interview. At no time was defendant handcuffed; no weapons were drawn; no threats or promises were made to defendant. He was not placed under arrest.

Corporal Gerald Williams has been with the Jefferson County Sheriff's Department for eleven years. He has had extensive training including drug investigating, interviewing, field operations, methamphetamine and methamphetamine laboratories. He has federal and state certifications in narcotics investigations. He was a narcotics investigator for nine years and at the time of the incident in question he was Supervisor of the Jefferson County Municipal Enforcement Group, known as the "MEG Unit". On October 25, 2010 he overheard the dispatch to 3650 Flucom Road. Shortly thereafter defendant called the 911 dispatcher and agreed to meet deputies at a fuel station and then at a basketball court but he did not appear at either location. Therefore Corporal Williams responded to the Flucom residence. He was aware of defendant's involvement in violence, weapons and drugs so he called defendant on his cell phone. He had defendant's number and defendant had Corporal Williams number from their previous contacts. When Corporal Williams called defendant he said he was sitting in his driveway so detectives responded to his residence at 12945 Hencher Road.

Defendant said to Corporal Williams "I'm assuming you want to look around." Corporal Williams indicated that he did and defendant said it was "OK" to look around. Corporal Williams gave defendant a Consent to Search form, which is the standard form used by the Jefferson County Sheriff's Department. (Gov.Ex.2) Defendant gave permission to search his residence and his vehicle, a 2001 Ford Excursion. Upon searching the residence, officers found under the couch a Pyrex dish containing a white powder, and a pen tube used as a smoking device. Both field-tested positive for methamphetamine. Corporal Williams told defendant what they found. Defendant said it was not his and asked the officers to fingerprint it.[3] Gov.Ex. 2A is an inventory of what was seized and indicates the glass baking dish, the plastic pen tube and an unknown amount of white powder substance. This inventory is signed by defendant. At no time was defendant handcuffed nor were any guns drawn. No threats or promises were made to induce defendant to consent to the search. Defendant was not arrested.

On the following day, October 26, 2010, Corporal Williams received a call from defendant on his cell phone. Defendant said he needed Corporal Williams' advice. He said he was driving down the road and saw a suitcase which he thought contained money. He said he picked it up and discovered it contained a methamphetamine lab. He said he put it in the back of his vehicle and was driving around with it. Because of the hazardous nature of methamphetamine labs, Corporal Williams told defendant

---

[3] The results of the fingerprint examination are currently pending.

to pull over, not to drive any farther and to stay there until Corporal Williams came to his location at Fox Farm Road and Flucom Road.

Corporal Williams was in an unmarked car and dressed in jeans and a jersey. At no time did he draw his weapon. Defendant showed Corporal Williams the blue suitcase in the rear of his SUV. Corporal Williams recognized in the suitcase items used in the manufacture of methamphetamine. Defendant then provided a voluntary statement. Defendant and Corporal Williams reviewed the Voluntary Statement form used by the Jefferson County Sheriff's Department. Gov.Ex.3. The form states:

> I understand that I am not under arrest for, nor am I being detained for any criminal offenses concerning the events I am about to make known to the JEFFERSON COUNTY SHERIFF'S OFFICE. Without being accused of or being questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will.

Defendant then wrote the same information he had given before about finding the blue suitcase by the side of the road. The statement was written at the scene, by the side of the road, on the hood of the car. Corporal Williams followed protocol and seized the suitcase for examination at the lab. No threats or promises were made to induce defendant to write this statement. He was not placed under arrest.

## CONCLUSIONS OF LAW

### Statement and Evidence Seized on October 25, 2010

Miranda warnings are only required when a person is interrogated and in custody. Miranda v. Arizona, 384 U.S. 436 (1966).

Custody for purposes of Miranda warnings occurs either upon formal arrest or any other circumstances in which the suspect is deprived of his freedom of action in

any significant way.  Miranda v. Arizona, 384 U.S. 436, 444 (1966); Berkemer v. McCarty, 468 U.S. 420, 429 (1984).  The extent of the physical or psychological restraints placed on defendant must be examined in light of whether a "reasonable person in the suspect's position would have understood the situation" to be one of custody.  Berkemer, 468 U.S. at 442.  The determination of custody arises from an examination of the totality of the circumstances.  United States v. Carter, 884 F.2d 368, 370 (8th Cir. 1989), (citing United States v. Lanier, 838 F.2d 281, 285 (8th Cir. 1988) (per curiam)).

The Eighth Circuit has set out certain indicia of custody which, while not exhaustive, are influential in the court's assessment of the totality of the circumstances:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).

The Griffin court characterizes the first three factors as "mitigating factors, that is to say the affirmative presence of one or more of these factors during questioning would tend to mitigate the existence of custody at the time of questioning."  Id.  On the other hand, "the remaining three factors may be characterized as coercive factors, which is to say that the affirmative presence of one or more of these factors during questioning would tend to aggravate the existence of custody."  Id.  The court has

specifically directed that "it is not necessary to a finding of custody that all of the foregoing indicia be presented by the factual circumstances of a case (citation omitted) and a particularly strong showing with respect to one factor may compensate for a deficiency with respect to other factors." (citation omitted). Griffin, 922 F.2d at 1349.

The chief concern is with the accused's subjective believe that "his freedom of action is curtailed to a degree associated with formal arrest," Berkemer, 468 U.S. at 439, and whether that belief is objectively reasonable under the circumstances. Id.; Griffin, 922 F.2d at 1349. When one is in the comfort of one's own home, courts are less likely to find the circumstances custodial. United States v. Axsom, 289 F.3d 496, 502 (8th Cir. 2002).

On October 25, 2010 defendant was at his residence. He was not under arrest. He was fully advised of his Miranda rights and placed his initials by each of the rights indicating that he understood. He was read the Waiver of Rights and decided not to answer Dep. Sieberg's questions about the incident involving Ms. Sparks.

He was free to move about. His statements to Corporal Williams were volunteered. He even said "I suppose you want to look around". In fact, "the Supreme court in Miranda expressly stated that '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admission is not affected by our holding today.'" United States v. Butzin, 886 F.2d 1016, 1018 (8th Cir. 1989) quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966). No strong-arm tactics or stratagems were used to induce defendant to speak. The atmosphere was not police dominated. Defendant orally agreed that the officers could search his residence and vehicle and

then he signed the Consent to Search form. There were no threats or promises made to him to induce him to sign the Consent. He was not under arrest at any time on October 25, 2010.

The undersigned finds that a reasonable person under the circumstances stated above would not believe that he was under arrest or that he was not free to leave. The facts show that the interview was not a custodial interrogation and that the statements made by defendant to Corporal Williams were voluntary. Because the statements were non-custodial, the <u>Miranda</u> warnings need not have been given. <u>Berkemer v. McCarty</u>, 468 U.S. 420 (1984); <u>Beckwith v. United States</u>, 425 U.S. 341 (1976).

The court further finds that <u>any</u> statements made on October 25, 2010 were knowingly and voluntarily made and should not be suppressed. The evidence seized was the result of defendant's knowing and voluntary consent to the search. It should not be suppressed.

**Statements and Evidence Seized on October 26, 2010**

On October 26, 2010 defendant initiated the call to Corporal Williams' cell phone saying he found a suitcase containing a methamphetamine lab. He voluntarily waited by the side of the road for the officers to arrive. The "custody" analysis set out above shows he was clearly not in custody at any time during the encounter and he was not arrested at the conclusion of it. The advice given at the top of the Voluntary Statement form, as set out fully above, shows that he knew he was not under arrest nor being detained. He acknowledged his statement was voluntary and not the result of questioning. He was free to leave or move about, the atmosphere was not police

dominated, no stratagems or strong-arm tactics were used and no threats or promises were made to induce him to make his oral or written statements. Neither defendant's statements nor the methamphetamine lab in the blue suitcase should be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements and Evidence be **DENIED**. [Doc. 83]

**IT IS FURTHER RECOMMENDED** that the government's Motion for Pretrial Determination of the Admissibility of Defendant's Statements be **GRANTED** [Doc. 61] and that the District Court find that defendant's statements will be admitted at trial.

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this   20th   day of May, 2011.